### OLMSTEAD et al. v. DISTILLING & CATTLE FEEDING CO.

(Circuit Court, N. D. Illinois. February 4, 1895.)

1. RECEIVERS—SELECTION—OFFICER OF CORPORATION—SPECULATION IN STOCK.
   While an officer of a corporation, whose misfortunes have made a re-
   ceivership necessary, is not ineligible to employment as receiver, yet, where
   the corporation is one that covers a vast diversity of conflicting interests,
   and especially of speculation, an officer should not be appointed without
   careful scrutiny of his official and personal antecedents, and one who is
   or has been a speculator in the stock of the corporation should never be
   appointed.

2. SAME.
   Certain stockholders of the D. Co. filed a bill against the company, aver-
   ring that it was insolvent; that its assets were scattered, and in danger
   of being consumed by attachment and other proceedings; and that a re-
   ceivership was necessary to protect the interests of stockholders. Upon
   this bill, with the consent of the company, receivers were appointed, one
   of whom was the president of the company. Certain other stockholders
   intervened, and asked the removal of the receivers, and substitution of
   others. It appeared that neither the complaining stockholders nor the
   president or directors had any substantial interest in the stock, and that
   the action of the complainants was taken at the instance of the president.
   It also appeared that the president, at the time of the receivership, was
   under contract to deliver 15,000 shares of the company's stock on the New
   York Stock Exchange, and was not the owner of any such shares. *Held*,
   that the acceptance of the receivership by the president, under these cir-
   cumstances, was an imposition on the court, and that he would be re-
   moved, and a person entirely disinterested appointed as principal receiver,
   together with one person nominated by the intervening stockholders and
   the other receiver originally appointed on the nomination of the directors.

3. SAME—PRACTICE—SECRECY.
   *Held*, further, that there was nothing unusual or improper in the fact that
   the original motion for the appointment of receivers was made without
   notice, and that it and the proceedings thereon and the appointment of
   receivers were kept secret until the papers were filed in the clerk's office.

This was a suit by one Olmstead and others against the Distilling
& Cattle Feeding Company for the appointment of receivers and
administration of its assets. Upon an ex parte application Messrs.

Greenhut and Lawrence were appointed receivers. Certain stockholders filed an intervening petition, and now move for the removal of such receivers.

Runnells & Burry, for the stockholders.
John S. Stevens, for the company.
Moran, Kraus & Mayer and Nathan Bijur, for interveners.

GROSSCUP, District Judge. This is an application to remove the receivers appointed January 28th. The bill, in effect, avers that the defendant company is insolvent; that its assets are scattered throughout the United States; that large amounts of liabilities are becoming due, upon which attachment proceedings and local receiverships are threatened; and that the nature of the property and the general situation of the company are such that, unless a court of equity, with power to administer upon the whole estate through original and ancillary receiverships, as if the property and parties were all within its own jurisdiction, is successfully appealed to, the estate will be wasted by a multitude of attachment and other proceedings, and the interests of the stockholders and the creditors thus irreparably damaged. The bill was filed by stockholders, and the appointment of the receivers consented to by the company. Thus, practically, the company surrendered to the court the custody and administration of its estate. The interveners moving for the removal of the receivers practically admit this condition of things by asking the court, not to vacate the receivership, but to change merely the personnel of the receivers. The case is thus divested of serious and perplexing questions that would otherwise arise.

It is very clearly shown that the proceedings under which the receivers were appointed were not adverse. The complainants held and represented a very small proportion of the stock. I am convinced that the steps taken by them were at the instance of the president of the company, and were not a contest, but merely the execution of the legal formula necessary to give the court, upon the face of the record, the requisite jurisdiction. The admissions of counsel upon the hearing disclosed that but a small proportion of the 350,000 shares of the stock is held for investment purposes. The counsel for the directors could recall less than 10,000 shares, and counsel for the committee named but 64,000 shares of this character. There are probably some more, but the fact remains that the vastly larger proportion of the stock is in the hands of New York brokers for speculative purposes, and thus subject to such rapid mutation of ownership that the stockholders' list of to-day furnishes no guide, and but little suggestion, of what it may be to-morrow. This vast issue of certificates, instead of representing substantial ownership of the property of the company, is only the chessboard upon which has been played the game of speculative finance. It is probably necessary that such a game should have a fair and impartial umpirage, but its appeal, I confess, does not excite my sympathy, as would that of men and women whose real

investments were tied up in the property. My chief solicitude on this hearing is not for those whose sole interest in the stock is for a point or two in its market quotations, but for those who have invested their means in these certificates as a source of constant and lasting income.

There was nothing in the appointment of these receivers, or the secrecy that attended the proceedings, until the papers reached the clerk's office at Peoria, that was either unusual or improper. The application was necessarily made out of court, and without notice; otherwise its presumably legitimate purpose might have been defeated by bringing on the adverse attacks which the proceedings were intended to forestall. It was not only the right, but the duty, of the clerk to keep the proceedings veiled until they had reached their destination in Peoria. But this does not relieve the case of the considerations, to some of which I have already adverted, and of others of which I shall now speak. It is shown that, not only were the complaining stockholders without any considerable interest in the property (and that only of a temporary character), but neither had the consenting president nor directors any substantial interest. The practical effect of the proceedings, therefore, was the bringing into the custody of the court, and away from the control of its owners, a vast property, without invoking upon full inquiry the independent judgment of the court as to the necessity of such a step, and at the instance of those who had only a small fraction of interest therein. I feel at liberty, therefore, to look upon the case now as if it were an original application for the appointment of receivers, and the stockholders were in court urging their several preferences. I have never felt that an officer of a corporation, whose misfortunes necessitated a receivership, should be ineligible to employment by the court, but this case convinces me that where a corporation is one that covers a vast diversity of conflicting interests, and especially of speculation, a stockholder's appointment to a receivership should be preceded by a most careful and thorough scrutiny into his official and personal antecedents and interests. The admissions in this case disclose that Mr. Greenhut, at the time of his appointment, was under an agreement upon the New York Stock Exchange to deliver upon demand 15,000 shares of stock of the company, and was not the possessor of any of them. In such a situation he could have but one personal interest. Every appreciation of the stock amounted to a large cut in his personal fortune. As a receiver, his duty would be to conserve the property, and enhance its value. As a private individual, his interest was to depreciate its value. Under such circumstances, his acceptance of the receivership was simply an imposition upon the court. Indeed, I will knowingly accept no man as a receiver for any corporation who is, or who has been, a speculator in its stocks. The private interest of the man is very apt to color, if not overcome, the duty of the official. The need of the day in corporate affairs is for managers who have an eye single to the interests of their trust. Such men will

never be found as long as stockholders permit them to gamble upon their securities. Especially is it the need of the day that officials who only come in contact with these affairs by virtue of their office should keep clean of any personal intermeddling that might, even remotely, tend to affect their official conduct. The only safe rule is to touch not with private fingers that which is intended only for the official hand. For these reasons I shall remove Mr. Greenhut.

I am determined, as far as possible, to have a searching inquiry into the affairs of the company, and in the interest of the conserving and rounding up of its assets, and for that purpose shall name a man who has no interest with any official or faction in the company, and who has, by his experience in like situations, proved himself both trustworthy and efficient. He will be the representative of the court, upon whose judgment the court will largely rely. I shall associate with him one of the nominees of the petitioners, because of their large interest in the assets, and also on account of their proposal to finance them out of their present difficulties, if given an opportunity. I think also the unanimous wish of the directors should be recognized. They are the parties in power, and would naturally continue in power until the 1st of April next, and they are especially intimate with the practical workings of the distillery business. I shall therefore associate with the principal receiver a man whose appointment will be agreeable to them, and whose experience as a distiller will aid in the administration of the trust. An order may be entered removing Mr. Greenhut, and appointing General John McNulta and John J. Mitchell to act along with Mr. Lawrence as receivers. General McNulta will be regarded as the principal receiver.